IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT WOMACK,

       Plaintiff,

   v.

COUNTY OF AMADOR, ESTATE OF
RUSSELL MOORE, deceased in his
individual capacity, DAVID J.
IREY, in his individual
capacity, TODD D. RIEBE, in his
individual capacity, RON HALL,
in his individual and official
capacities, RICH DUNLOP, in his
individual capacity, JIM
WALSHAW, in his individual and
official capacities, ROBERT
WERTMAN, in his individual
capacity, JAMES GARCIA, in his
individual capacity, and DOES 1
through 10,

       Defendants.

_____/

No. Civ. S-02-1063 RRB DAD

**Memorandum of Opinion**
**and Order**

    Robert Womack ("Womack") brought a civil rights action against the County of Amador ("County"), California Highway Patrol Officer Russell Moore ("Moore"), San Joaquin County

1

Deputy District Attorney David J. Irey ("Irey"), Amador County District Attorney Todd Riebe ("Riebe"), Amador County District Attorney Investigator Ron Hall ("Hall") and others,[1] alleging Fourth Amendment claims arising out of two searches allegedly executed under warrants obtained with knowingly false affidavits during a criminal investigation into the removal and disposal of an underground gasoline storage tank.[2]  The County now moves for summary judgment or, in the alternative, summary adjudication.[3] For the reasons stated below, the court GRANTS the motion.

## I.  BACKGROUND

In April 1998, KRL Partnership ("KRL")[4] purchased a defunct gasoline station in Jackson, California, in order to convert the

---

[1] The other named defendants are: Rich Dunlop and Robert Wertman, California Highway Patrol Officers, Jim Walshaw, an Amador County District Attorney Investigator, and James Garcia, an investigator for the California Department of Insurance. Compl. ¶¶ 10-13.

[2] Womack also alleges a Fourteenth Amendment malicious prosecution claim.

[3] Inasmuch as the Court concludes the parties have submitted memoranda thoroughly discussing the law and evidence in support of their positions, it further concludes oral argument is neither necessary nor warranted with regard to the instant matter.  See Mahon v. Credit Bureau of Placer County, Inc., 171 F.3d 1197, 1200 (9th Cir. 1999)(explaining that if the parties provided the district court with complete memoranda of the law and evidence in support of their positions, ordinarily oral argument would not be required).

[4] KRL is a California general partnership by and between certain children of Womack created for the ownership of land investments.  Pl.'s Additional Material Facts ("AMF") ¶ 1.

real property into a parking lot.  Pl.'s AMF ¶ 4; Def.'s Undisputed Material Facts ("UMF") ¶¶ 1-2.  On May 2, 1998, Plaintiff Womack oversaw the removal of an underground gasoline storage tank.  Pl.'s AMF ¶ 7; Def.'s UMF ¶ 3.  Upon learning of the removal of the storage tank, Amador County officials expressed concern about environmental contamination and referred the matter to the Amador County District Attorney's office (the "D.A.'s office"), which instituted a criminal investigation. Def.'s UMF ¶¶ 2, 5, 14-16, 18.

In June 1998, District Attorney Stephen Cilenti ("Cilenti") assigned the case to Hall, an investigator employed by the D.A.'s office.  Pl.'s AMF ¶ 14; Def.'s UMF ¶ 18.  Hall was assigned the task of determining whether Womack had committed environmental crimes in connection with the removal and disposal of the underground gasoline storage tank.  Pl.'s AMF ¶ 14.  Due to Hall's inexperience with environmental cases, Irey, a San Joaquin County Deputy District Attorney, was specially appointed to conduct the investigation in Amador County, assisted by Moore, a California Highway Patrol Officer.  Id. ¶¶ 17, 21, 33; Def.'s UMF ¶¶ 19, 24.  Hall and Irey located the removed storage tank and obtained a copy of a check, drawn from a KRL bank account, used to pay for the disposal of the storage tank. Def.'s UMF ¶¶ 20-22.  The address on the check was 15864 Ridge

Road, Sutter Creek, California, a KRL property and Womack's home address (the "Ridge Road Property"). Id. ¶¶ 23, 26.

In October 1998, Moore drafted an affidavit, with the assistance of Irey and Hall, in support of a search warrant (the "first search warrant") authorizing the seizure of KRL records from Womack's residence on the Ridge Road property. Pl.'s AMF ¶¶ 44-45; Def.'s UMF ¶ 26. On October 30, 1998, Moore and investigators from the D.A.'s office, including Hall, executed a search of the Ridge Road Property. Pl.'s AMF ¶ 50; Def.'s UMF ¶ 29. During the search, investigators, including Hall and Moore, seized a broad range of documents. Pl.'s AMF ¶ 51. On December 1, 1998, a grand jury indicted Womack and others on twenty-one counts, most of which concerned the removal of the underground storage tank and actions related to its disposal. Id. ¶ 60; Def.'s UMF ¶ 30.

On January 4, 1999, Todd Riebe ("Riebe") was sworn in as Amador County District Attorney. Def.'s UMF ¶ 31. On January 11, 1999, Moore, assisted by Irey, submitted an affidavit in support of a search warrant (the "second search warrant") to search the Ridge Road Property. Id. ¶ 32; Pl.'s AMF ¶ 65. The affidavit submitted in support of the second search warrant indicated that it had two goals: (1) it sought evidence to prosecute the pending indictment against Womack; and (2) it sought to investigate and uncover new crimes. Exh. 50,

attached to Pl.'s Opp. to Def.'s Mtn., for Summary Judgment/Adjudication ("MSJ/MSA"). Specifically, the affidavit characterized the aims of the search as follows: "to gather evidence as to the crimes[] which Robert WOMACK was indicted on and to help determine the entire scope of these business activities that are permeated with fraud we need to determine several additional things." Id.[5]  Before Moore submitted the affidavit, it was reviewed by Irey and approved by Riebe. Pl.'s AMF ¶¶ 69-73.

On January 11, 1999, the second search warrant was approved authorizing the seizure of a broad range of documents created since January 1, 1995 (Pl.'s AMF ¶¶ 79, 85), and was executed by Hall, Moore, and others. Def.'s UMF ¶ 34. After discovering evidence outside the scope of the warrant, Moore interrupted the search and returned to court with Irey to obtain an extended warrant authorizing seizure of documents dating back to 1990. Id. ¶ 35; Pl.'s AMF ¶¶ 86-87. Following approval of the extended warrant, Moore allegedly seized documents relating to all aspects of the KRL partnership going back to 1977 and earlier. Pl.'s AMF ¶¶ 89-90.

---

[5]  The affidavit further stated that "we have now additionally embarked on the early stages of tracking unreported income and the monies of the WOMACK'S [sic] via their various questionable transfers of personal and real property and the tax implications of those activities." Exh. 50, attached to Pl.'s Opp. to Def.'s MSJ/MSA.

On August 18, 1999, the Amador County Superior Court found the warrant authorizing the October 30, 1998 search to be facially overbroad and beyond the scope of the probable cause underlying the search. Pl.'s AMF ¶ 54; Exh. 25, attached to Pl.'s Opp. to Def.'s MSJ/MSA. The court ordered that all KRL business records seized during the search to be suppressed on the basis that the affidavit in support of the warrant did not establish probable cause for the seizure of such records. Id. On July 3, 2001, the Third District Court of Appeal affirmed the trial court's order in part and reversed it in part. Exh. 26, attached to Pl.'s Opp. to Def.'s MSJ/MSA. Specifically, the Third District concluded that the trial court erred by suppressing all KRL business records because the affidavit in support of the warrant established probable cause for the seizure of some of KRL's business records (e.g., the records relating to the alleged removal and disposal of the underground storage tank). Id. The Third District vacated the trial court's order with directions to enter a new order suppressing only KRL business records unrelated to the alleged removal and disposal of the underground storage tank. Id.

In September 2000, the D.A.'s office transferred Womack's criminal prosecution to the California Attorney General's Office. Def.'s UMF ¶ 41. In August 2001, the Attorney General's Office dismissed the criminal charges against Womack

6

and instituted a civil action against Womack and others.  Id. ¶¶ 42-43.  No criminal charges were ever subsequently filed against Womack, KRL or any of its partners.  Pl.'s AMF ¶ 10.

On May 15, 2002, Womack filed a civil rights action under 42 U.S.C. § 1983 alleging the following claims: (1) Fourth Amendment violations (unreasonable search and seizure); (2) Fourteenth Amendment violation (malicious prosecution); and (3) Monell liability.  Compl. ¶¶ 1-84.  On August 10, 2007, the County filed a motion for summary judgment or, in the alternative, summary adjudication.  Docket at 72.  The County seeks summary judgment/adjudication on the following grounds: (1) the Fourth Amendment claims are time-barred; (2) the Monell claim fails because the county officials connected with this action are immune from liability under the Eleventh Amendment, and/or because Womack failed to proffer evidence demonstrating that the implementation of a county policy, custom or practice caused the alleged constitutional deprivations; and (3) the malicious prosecution claim fails because Womack failed to proffer evidence establishing a genuine issue of material fact as to whether the prior criminal prosecution was pursued to a favorable termination.  These arguments are discussed individually below.

//

//

## II.  DISCUSSION

**A.  Legal Standard**

Rule 56(b) permits a party whom a claim has been asserted to "move at any time, with or without supporting affidavits, for summary judgment/adjudication on all or part of the claim." Fed. R. Civ.P. 56(b).   Summary judgment/adjudication is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  An issue of fact is "genuine" if it constitutes evidence with which "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  That genuine issue of fact is "material" if it "might effect the outcome of the suit under the governing law."  See id. ("As to materiality, the substantive law will identify which facts are material.   Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the nonmoving party will have the burden of proof on an issue at trial, the

movant's burden may be discharged by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case.  See id. at 325; Miller v. Glenn Miller Productions, Inc., 454 F.3d 975, 987 (9th Cir. 2006). The moving party need not disprove the other party's case. Miller, 454 F.3d at 987.  "Thus, [s]ummary judgment for a defendant is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial."  Id. (internal quotation marks omitted).  If the moving party sustains its burden, the burden then shifts to the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  See Celotex, 477 U.S. at 324 (internal quotation marks omitted) (citing Fed.R.Civ.P. 56(e)); Miller, 454 F.3d at 987.  This burden requires more than a simple showing that there is some "metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The mere existence of a scintilla of evidence is likewise insufficient to create a genuine factual dispute. Anderson, 477 U.S. at 252.  "If the nonmoving party fails to produce enough evidence to create a genuine issue of material

fact, the moving party wins the motion for summary judgment." Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1103 (9th Cir. 2000).   "But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion."   Id.

On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party.   Hector v. Wiens, 533 F.2d 429, 432 (9th Cir. 1976).   The inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.   Valadingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989).   Where different ultimate inferences may be drawn, summary judgment is inappropriate.   Sankovich v. Insurance Co. of North America, 638 F.2d 136, 140 (9th Cir. 1981).   The purpose of summary judgment/adjudication is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial."   Matsushita, 475 U.S. at 587. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"   Id.

**B.   Statute of Limitations**

The County argues that Womack's Fourth Amendment claims are time-barred because more than one-year passed from the date the

claims accrued, October 1998 and January 1999, respectively, and the date the instant action was commenced, May 15, 2002.

In § 1983 actions, federal courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law. <u>Jones v. Blanas</u>, 393 F.3d 918, 927 (9th Cir. 2004). Prior to January 1, 2003, California's one-year statute of limitations for personal injury actions applied to § 1983 suits in federal court. <u>Maldonado v. Harris</u>, 370 F.3d 945, 954 (9th Cir. 2004). Effective January 1, 2003, the new California statute of limitations for assault, battery, and other personal injury actions is two years. Cal. Civ. Proc. Code § 335.1. Because the extension is not retroactive, it does not resuscitate claims that would have already been barred by the prior statute of limitations. <u>Maldonado</u>, 370 F.3d at 954-55. Here, because the instant action was commenced on May 15, 2002, any claims accruing before May 15, 2001 are time-barred.

Federal law determines when a civil rights claim accrues. <u>Maldonado</u>, 370 F.3d at 955. "'Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" <u>Id.</u> Under federal law, § 1983 claims relating to pending charges do not accrue until the charges are dismissed if a judgment in favor of the

plaintiff would necessarily imply the invalidity of any sentence that might result from prosecution of pending charges.  See Harvey v. Waldron, 210 F.3d 1008, 1014-16 (9th Cir. 2000) ("hold[ing] that a § 1983 action alleging illegal search and seizure of evidence upon which criminal charges are based does not accrue until the criminal charges have been dismissed or the conviction has been overturned."); accord Whitaker v. Garcetti, 486 F.3d 572, 583 (9th Cir. 2007).  In this case, because Womack's § 1983 action challenges the searches and seizure of evidence upon which the criminal charges were based, his Fourth Amendment claims did not accrue until the criminal charges were dismissed on August 6, 2001.  As such, Womack's Fourth Amendment claims are timely because the instant action was commenced on May 15, 2002, less than one-year after the criminal charges were dismissed.[6]

---

[6] Alternatively, Womack's Fourth Amendment claims are timely because, under California law, these claims were tolled during the period in which criminal charges were pending as this action is based, in part, on the conduct of a county peace officer. See Cal. Gov't Code § 945.3 ("No person charged by indictment . . . or other accusatory pleading charging a criminal offense may bring a civil action for money or damages against a peace officer or the public entity employing a peace officer based upon conduct of the peace officer relating to the offense for which the accused is charged, including an act or omission in investigating or reporting the offense or arresting or detaining the accused, while the charges against the accused are pending before a superior court.").  The definition of "peace officer" includes an investigator employed by the D.A.'s Office (e.g., Hall). See Cal. Penal Code § 830.1 (defining peace officer as

**C.    State Agent Immunity Under § 1983**

The County argues that summary adjudication is appropriate with respect to Womack's Fourth Amendment claims because the County officials connected with this action are immune from liability by virtue of the Eleventh Amendment and the doctrine of sovereign immunity.

Section 1983 provides for a damages action against "[e]very person" who, while acting under color of law, subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."    The federal Constitution's Eleventh Amendment grants sovereign immunity from such suits not only to each of the fifty states but also to state officers.    See Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).    This is because a suit against a state officer "is no different from a suit against the State itself." Id.; see Doe v. Lawrence Livermore Nat'l Lab., 131 F.3d 836, 839 (9th Cir. 1997) (a federal action for monetary damages against an individual State official acting in his official capacity is barred by the Eleventh Amendment in the same way that an action against the State is barred).    The United States Supreme Court has held that cities, counties, and local officers sued in their

---

"[a]ny sheriff, undersheriff, or deputy sheriff, employed in that capacity, of a county, . . . or any inspector or investigator employed in that capacity in the office of a district attorney, is a peace officer.").

official capacity are themselves "persons" for purposes of §

1983 and, although they cannot be held vicariously liable under

§ 1983 for their subordinate officers' unlawful acts, they can

be held directly liable for constitutional violations carried

out under their own regulations, policies, customs, or usages by

persons having "final policymaking authority" over the actions

at issue.  <u>McMillian v. Monroe County</u>, 520 U.S. 781, 784-85

(1997).[7]  However, states and state officers sued in their

official capacity are not considered persons under § 1983 and

are immune from liability under the statute by virtue of the

_____

[7] A plaintiff may establish municipal liability by showing:
(1) a longstanding practice or custom which constitutes the
standard operating procedure of the local government entity; or
(2) that the decision-making official was, as a matter of state
law, a final policymaking authority whose edicts or acts may
fairly be said to represent official policy in the area of
decision; or (3) that an official with final policymaking
authority either delegated that authority to, or ratified the
decision of, a subordinate.  <u>Ulrich v. City and County of San
Francisco</u>, 308 F.3d 968, 984-85 (9th Cir. 2002); <u>Menotti v. City
of Seattle</u>, 409 F.3d 1113, 1147 (9th Cir. 2005).  A municipal
policy may be inferred from widespread practices or evidence of
repeated constitutional violations for which the errant
municipal officers were not discharged or reprimanded.  <u>Menotti</u>,
409 F.3d at 1147 (internal quotation marks omitted).  A
municipality can also be liable for an isolated constitutional
violation when the person causing the violation has "final
policymaking authority."  <u>Christie v. Iopa</u>, 176 F.3d 1231, 1235
(9th Cir. 1999).  Whether an official has final policymaking
authority is a question for the court to decide based on state
law.  <u>Id.</u>  Here, Womack does not point to a municipal policy to
support his <u>Monell</u> claim; rather, he bases this claim on the
ground that the alleged constitutional deprivations were caused
by the decisions of County officials with final policymaking
authority.

Eleventh Amendment and the doctrine of sovereign immunity. Howlett v. Rose, 496 U.S. 356, 365 (1990). Whether this immunity applies to a particular governmental official is a question of federal law, but the "inquiry is dependent on an analysis of state law." McMillian, 520 U.S. at 786.

The framework for determining whether an official qualifies for Eleventh Amendment immunity in § 1983 claims was established by the United States Supreme Court in McMillian, 520 U.S. 781. First, a court should "ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue." Id. at 785. Second, the actual function of a governmental official, in a particular area, depends "on the definition of the official's functions under relevant state law." Id. at 786. While state law serves as valuable evidence for this determination, federal courts need not blindly accept the California Supreme Court's "balancing of the different provisions of state law in determining liability under § 1983." Weiner v. San Diego County, 210 F.3d 1025, 1029 (9th Cir. 2000). The federal analysis of state law to determine § 1983 liability includes an inquiry into the "state's constitution, statutes, and case law." Brewster v. Shasta County, 275 F.3d 803, 806 (9th Cir. 2001). Thus, while "[t]he California Supreme Court is the ultimate interpreter of California state law[,]" Weiner, 210 F.3d at 1028-29, when

determining a county's liability under <u>McMillian</u>, federal courts engage in an "independent analysis of California's constitution, statutes and case law."   <u>See</u> <u>Streit v. County of Los Angeles</u>, 236 F.3d 552, 561 (9th Cir. 2001).   Because § 1983 liability implicates federal, not state law, California case law is not controlling.   <u>Id.</u> at 564; <u>see</u> <u>Owen v. City of Independence</u>, 445 U.S. 622, 647 n.30   (1980) ("Municipal defenses-including an assertion of sovereign immunity-to a federal right of action are, of course, controlled by federal law.").   The determination of whether a county official acts for the state or for the county is a question of law.   <u>See</u> <u>Jett v. Dallas Independent School Dist.</u>, 491 U.S. 701, 737 (1989).

In the present case, the County argues that it is immune from liability under the Eleventh Amendment on the basis that in California, a district attorney and his investigators act on behalf of the state rather than the county when engaged in investigating crime.   Womack, for his part, maintains that the County is not immune from liability under the Eleventh Amendment because, under Ninth Circuit precedent, a district attorney (as a policymaker for the County with respect to obtaining and executing warrants) and/or his deputies and investigators (policymakers through delegation) act on behalf of the county rather than the state when investigating crime.   Because the County does not dispute that the District Attorney has final

16

policymaking authority over obtaining and executing warrants,[8] the County's § 1983 liability, turns, in part, on whether district attorneys and their investigators, when investigating crime, act on behalf of the state (which would immunize the County from § 1983 liability), or on behalf of the county (which would subject the County to § 1983 liability).

Presently, as noted by the parties, there is a split in authority between the Ninth Circuit and the California Supreme Court with respect to whether a district attorney acts on behalf of the state or the county when investigating crime. <u>Compare Pitts v. County of Kern</u>, 17 Cal.4th 340, 362 (1998) (reviewing California's constitution, statutes and case law, and concluding that a district attorney represents the state rather than the county when preparing to prosecute and when prosecuting crimes, and when establishing policy and training in such areas); <u>with Bishop Paiute Tribe v. County of Inyo</u>, 291 F.3d 549, 562-565 (9th Cir. 2002) (reviewing California's constitution, statutes and case law, and concluding that a district attorney represents the county rather than the state when engaging in investigatory conduct (e.g., obtaining and executing search warrants) as opposed to prosecutorial conduct) vacated and remanded on other

_____

[8] <u>See</u> <u>Bach v. County of Butte</u>, 147 Cal.App.3d 554, 570 (1983) (concluding that the District Attorney is someone whose acts represent official policy).

grounds by <u>Inyo County v. Paiute-Shoshone Indians of the Bishop
Community of the Bishop Colony</u>, 538 U.S. 701 (2003).[9]  Following
<u>Bishop</u>, the California Supreme Court clarified its holding in
<u>Pitts</u> by explaining that a district attorney represents the
state, and is not considered a policymaker for the county, when
prosecuting crimes and when preparing to prosecute crimes,
including investigating crimes in advance of prosecution.  <u>See
Venegas v. County of Los Angeles</u>, 32 Cal. 4th 820, 832-33
(2004).  In <u>Venegas</u>, the California Supreme Court stated that
the "precise holding [in <u>Pitts</u>] was that a district attorney 'is
a state official *when preparing to prosecute* and when
prosecuting criminal violations of state law[,]' " which is
"clearly confined . . . to situations in which district
attorneys . . . are actually engaged in performing law
enforcement duties, such as investigating and prosecuting crime,
or training staff and developing policy involving such matters."
<u>Venegas</u>, 32 Cal.4th at 838-39 (emphasis in original).[10]  In

---

[9] <u>See also Weiner</u>, 210 F.3d at 1030 (applying the <u>McMillian</u>
analytic framework and concluding that, as a matter of law,
based upon California's constitution, statutes and case law, a
county district attorney acts as a state official when engaging
in prosecutorial conduct (e.g., a district attorney represents
the state when deciding whether to prosecute an individual)).

[10]  In clarifying <u>Pitts</u>, the California Supreme Court
expressly criticized the distinction drawn by <u>Bishop</u> between a
district attorney prosecuting crime on the one hand and
investigating crime on the other; observing that a district
attorney acts on behalf of the state when investigating crimes

<u>Pitts</u>, <u>Bishop</u> and <u>Venegas</u>, both the Ninth Circuit and the California Supreme Court applied the analytical framework set forth in <u>McMillian</u>, but nonetheless reached conflicting conclusions.  Thus, the question becomes which analysis the court should follow.

In the present case, the court finds the Ninth Circuit's reasoning in <u>Bishop</u> to be persuasive.[11]  Although the Ninth Circuit's <u>McMillian</u> analysis in <u>Bishop</u> pre-dated the California Supreme Court's analysis in <u>Venegas</u>, and therefore lacked the benefit of the analysis by the state's highest court, ultimately the holding in <u>Venegas</u> is only binding on state courts because the ultimate issue-whether or not California district attorney's are subject to liability under § 1983 when investigating crime-

---

in advance of prosecution because: " '[n]o meaningful analytical distinction can be made between . . . prosecuting crime on the one hand, and training/policymaking regarding criminal investigation and prosecution on the other[.]  Indeed, a contrary rule would require impossibly precise distinctions.'" <u>See</u> <u>Venegas</u>, 32 Cal.4th at 833, 837-39.

[11]  While the court recognizes that the <u>Bishop</u> decision has no precedential authority because it has been vacated, <u>Durning v. Citibank, N.A.</u>, 950 F.2d 1419, 1424, n.2 (9th Cir. 1991), it nonetheless finds the case to have persuasive value.  <u>DHX, Inc. v. Allianz AGF MAT, Ltd.</u>, 425 F.3d 1169, 1176 (9th Cir. 2005) (observing that "at minimum, a vacated opinion still carries informational and perhaps even persuasive or precedential value"); <u>see</u> <u>also</u> <u>County of Los Angeles v. Davis</u>, 440 U.S. 625, 646 n.10 (1979) (Powell, J., dissenting) (asserting that the opinion of the court of appeals, though vacated, "will continue to have precedential weight and, until contrary authority is decided, [is] likely to be viewed as persuasive authority if not the governing law of the [ ] Circuit").

is a question of federal law even though it requires the application of some principles of state law to resolve it. Streit, 236 F.3d at 560 ("The question of municipal liability under section 1983 is one of federal law."). Thus, while Venegas and Pitts are relevant in this court's "analysis of state law" as required by McMillian, these cases do not overturn the Ninth Circuit's reasoning in Bishop on the ultimate question under the federal statute. Accordingly, until Bishop is overturned by a panel of the Ninth Circuit or the United States Supreme Court, the Ninth Circuit's reasoning in Bishop is persuasive authority for this court. Therefore, because the Ninth Circuit in Bishop squarely addressed the issue of whether a district attorney acts on behalf of the state rather than the county when investigating crimes, and concluded, after applying the McMillian analytical framework, that a district attorney acts for the county when engaging in investigatory acts, Bishop, 291 F.3d at 562-65, the court concludes that the district attorneys and the district attorney investigator in this action are not immune from liability under the Eleventh Amendment and the doctrine of sovereign immunity for their acts in connection with obtaining and executing the search warrants at issue.[12]   As such, the County is not immune from § 1983 liability.

---

[12] Although this case differs from Bishop insofar as Womack

Nevertheless, the court concludes that Womack's <u>Monell</u> claim fails because there is no direct evidence before the court of the existence of an unconstitutional policy, nor is there any evidence of a pattern of municipal activity on the part of the County.  No other incidents are described.  Nor is there proof that the alleged constitutional deprivations were caused by an existing, unconstitutional municipal policy, which can be attributed to a municipal policymaker.  <u>See</u> <u>City of Okl. City v. Tuttle</u>, 471 U.S. 808, 824 (1985) (while a municipality may be liable under <u>Monell</u> for a single incident where the person causing the violation has "final policymaking authority" (e.g., District Attorney), "[p]roof of a single incident of

was indicted at the time of the second search, this search, like the search in <u>Bishop</u>, was an investigative rather than prosecutorial function because it went beyond gathering evidence for the prosecution of Womack for environmental crimes as it sought evidence of whether KRL was permeated with fraud.  <u>See</u> <u>KRL v. Moore</u>, 384 F.3d 1105, 1113-114 (9th Cir. 2004) (concluding that the collateral investigation into whether KRL was permeated with fraud was an investigative rather than prosecutorial function because it went beyond any legitimate preparation to prosecute Womack for any crime in the removal of the storage tank or other crime charged in the indictment. Specifically, the court concluded that the defendants conduct in connection with the collateral investigation was not protected by absolute immunity "because defendants were 'engage[d] in behavior typically associated with police work [such as] pursuing leads, exploratory fact gathering, and searching for evidence' ").  Accordingly, because obtaining and executing the second search warrant was an investigative rather than a prosecutorial function, the district attorneys and their investigator acted on behalf of the county rather than the state with respect to such conduct, and therefore are not entitled to sovereign immunity under the Eleventh Amendment.

unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."). In this case, Womack asserts that his Fourth Amendment rights were violated based on: (1) District Attorney Cilenti's decision to assign Hall as the lead investigator despite his inexperience investigating environmental crimes; and (2) District Attorney Riebe's decision to seek evidence of new crimes in the "second search warrant."[13]   These alleged incidents of unconstitutional activity are insufficient to establish municipal liability because there is no evidence that the alleged deprivations were caused by an existing, unconstitutional municipal policy, which can be attributed to a municipal policymaker.

To the extent that Womack attempts to argue that municipal liability attaches based upon the notion that Cilenti and Riebe ratified the unconstitutional conduct of subordinates, the court rejects this argument.   Womack did not proffer evidence demonstrating that either Cilenti or Riebe ratified a subordinate's decision and the basis for it, and had knowledge

---

[13] In this regard, Womack alleges that his Fourth Amendment rights were violated because Riebe knew that the affidavit in support of the second search warrant did not establish probable cause for the issuance of a search warrant to search for evidence of new crimes.

of the alleged constitutional violation and actually approved it. See Christie, 176 F.3d 1239. (while a municipality may be liable under Monell for a single incident where a final policymaker ratifies a subordinates decision, ratification requires proof that an authorized policymaker has approved the subordinates decision and the basis for it, and has knowledge of the alleged constitutional violation and actually approves it). The mere assignment of Hall as an investigator, without more, is insufficient to support municipal liability predicated upon a ratification theory. Nor is Riebe's decision to seek evidence of new crimes in the "second search warrant," without more, sufficient evidence to support municipal liability predicated upon a ratification theory. Riebe's refusal to overrule a subordinate's completed act (i.e., the affidavit prepared by Irey and Moore in support of the second search warrant) does not constitute approval to support Monell liability.[14] See Weisbuch v. County of Los Angeles, 119 F.3d 778, 781-82 (9th Cir. 1997) ("To hold cities liable under section 1983 whenever policymakers

_____

[14] In KRL, 384 F.3d at 1116-117, the Ninth Circuit held that Riebe was entitled to qualified immunity for his approval of the January 11 warrant (i.e., the second search warrant) because it was not "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." In doing so, the Ninth Circuit implicitly recognized that reasonable minds could disagree as to whether probable cause supported the second search warrant and affidavit. See KRL v. Estate of Moore, 512 F.3d 1184, 1191 (9th Cir. 2008).

fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle *respondeat superior* liability into section 1983.") (citation and internal quotation marks omitted).  Additionally, to the extent that Womack argues that municipal liability attaches to the County based upon the notion that Irey, Hall or Moore exercised policymaking authority on behalf of the County over obtaining and executing the search warrants at issue, the court finds this argument unpersuasive. Womack cites neither facts nor law to support the proposition that, as a matter of state law, a deputy district attorney, or a district attorney investigator, or a California Highway Patrol Officer are individuals whose acts represent official County policy, i.e., Womack failed to demonstrate that Irey, Hall or Moore had the authority to make final policy over obtaining and executing search warrants or that their edicts or acts in this regard may be fairly said to represent official policy of the municipality.  See Trevino v. Gates, 99 F.3d 911, 920 (9th Cir. 1996) (concluding that police officers are not officials with final policy-making authority); Bach, 147 Cal.App.3d at 570 (concluding that while a District Attorney is someone whose acts represent official policy, this rule does not extend to deputy district attorneys (or municipal employees other than elected representatives or departmental supervisors) because it would cause municipalities to be routinely liable for the tortious

acts of employees who violate constitutional rights violating the teachings of <u>Monell</u>, namely that there is no respondeat superior liability under § 1983). Moreover, the court finds that Womack failed to designate specific facts raising the existence of a genuine issue of material fact as to whether final policymaking authority was ever delegated to Irey, Hall or Moore. The mere assignment of Irey, Hall and Moore to investigate Womack by the District Attorney, without more, is insufficient to establish a genuine issue of material fact as to whether final policymaking authority was delegated to Irey, Hall or Moore.[15] Finally, the court finds that Womack's failure to train/supervise theory of municipal liability fails because he did not proffer evidence demonstrating that the alleged inadequacy of training or supervision was the result of a

---

[15] An official delegates final policymaking authority when it delegates final authority to establish municipal policy with respect to the challenged action, not when it delegates discretion to act on the municipalities behalf. <u>Christie</u>, 176 F.3d at 1236. In making this determination, courts consider whether the official's discretionary decision is constrained by policies not of that official's making and whether the official's decision is subject to review by the municipality's authorized policymakers. <u>Id.</u> Because Womack failed to proffer evidence demonstrating that Irey, Hall or Moore had final authority to establish municipal policy over obtaining and executing search warrants, or that they were not constrained by policies not of their making, or that their decisions regarding obtaining and executing search warrants were not subject to review by the District Attorney, municipal liability does not attach to the County under § 1983 for the conduct of Irey, Hall and Moore for their conduct in connection with obtaining and executing the search warrants at issue.

"deliberate" or "conscious" choice.   While a local government may be liable for constitutional violations resulting from its failure to supervise, monitor or train, liability only attaches where the inadequacy of said supervision, monitoring or training amounts to deliberate indifference to the rights of the people with whom the local government comes into contact.  <u>See</u> <u>City of Canton v. Harris</u>, 489 U.S. 378, 388(1989); <u>Long v. County of Los Angeles</u>, 442 F.3d 1178, 1188-89 (9th Cir. 2006); <u>see</u> <u>also</u> <u>Alexander v. City and County of San Francisco</u>, 29 F.3d 1355, 1367 (9th Cir. 1994) (absent evidence showing that the alleged inadequacy in training was the result of a "deliberate" or "conscious" choice, any shortfall in training can only be classified as negligence on the part of the municipal defendant- a much lower standard of fault than the deliberate indifference necessary to establish a municipal policy).

For these reasons, summary adjudication of Womack's Fourth Amendment claims is appropriate.

**D.   Malicious Prosecution**

The County argues that summary adjudication of Womack's malicious prosecution claim is appropriate because Womack failed to proffer evidence establishing a genuine issue of material fact as to whether the prior criminal prosecution was pursued to a favorable termination.

The general rule is that a malicious prosecution claim is not cognizable under § 1983 if process is available in the state judicial system to provide a remedy.   Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).   Nonetheless, "an exception exists to the general rule when a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights."   Bretz v. Kelman, 773 F.2d 1026, 1031 (9th Cir. 1985) (en banc).   Thus, a malicious prosecution plaintiff "must show that the defendants prosecuted her with malice and without probable cause, and that they did so for the purpose of denying her equal protection or another specific constitutional right."   Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995).

A malicious prosecution claim under § 1983 is based on state law elements.   See Usher, 828 F.2d at 562.   In California, the malicious prosecution plaintiff must plead and prove that the prior proceeding commenced by or at the direction of the malicious prosecution defendant, was: (1) pursued to a legal termination favorable to the plaintiff; (2) brought without probable cause; and (3) initiated with malice.   Villa v. Cole, 4 Cal. App. 4th 1327, 1335 (1992); Sagonowsky v. More, 64 Cal. App. 4th 122, 128 (1998).   If a plaintiff cannot establish any one of these three elements, his malicious prosecution action

will fail.   StaffPro, Inc. v. Elite Show Services, Inc., 136 Cal.App.4th 1392, 1398 (2006).

     With respect to the element of favorable termination, this element "requires a termination reflecting the merits of the action and plaintiff's innocence of the misconduct." Pattiz v. Minye, 61 Cal.App.4th 822, 826 (1998).   A termination is "not necessarily favorable simply because the party prevailed in the prior proceeding; the termination must relate to the merits of the action by reflecting either on the innocence of or lack of responsibility for the misconduct alleged against him." Sagonowsky, 64 Cal.App.4th at 128.   "If the resolution of the underlying action leaves some doubt concerning plaintiff's innocence or liability, it is not a favorable termination sufficient to allow a cause of action for malicious prosecution." Pattiz, 61 Cal. App. 4th at 826.   "'It is hornbook law that the plaintiff in a malicious prosecution action must plead and prove that the prior judicial proceeding of which he complains terminated in his favor.'" Sagonowsky, 64 Cal.App.4th at 128; see Awabdy v. City of Adelanto, 368 F.3d 1062, 1068 (9th Cir. 2004) (an individual seeking to bring a malicious prosecution claim must generally establish that the prior proceedings terminated in such a manner as to indicate his innocence.  A dismissal in the interests of justice satisfies this requirement if it reflects the opinion of the prosecuting

party or the court that the action lacked merit or would result in a decision in favor of the defendant.).    "Favorable termination 'is an essential element of the tort of malicious prosecution, and it is strictly enforced.'"   StaffPro, 136 Cal.App.4th at 1400.   The element of favorable termination in a malicious prosecution action is a legal question for the court to decide.   Id. at 1398.

In the present case, the underlying action was the prosecution of Womack for environmental crimes allegedly committed during the removal and disposal of an underground storage tank.   Following a search of Womack's residence and seizure of documents, Womack was indicted by a grand jury on twenty-one counts, most of which concerned the removal of the underground storage tank and actions related to its disposal. The prosecution of this action was subsequently terminated on a motion by the Attorney General's Office to dismiss all charges "in the interests of justice."   Shortly thereafter, a civil enforcement action was instituted by the Attorney General's Office against Womack predicated upon the same facts as the criminal prosecution, seeking, among other things, civil penalties for the unlawful removal and disposal of the underground storage tank.[16]   Womack maintains that a termination

---

[16] Decl. of Laurence L. Angelo, Exh. S.

of the criminal prosecution "in the interests of justice" is sufficient to satisfy the favorable termination element of his malicious prosecution claim.   In this regard, the court finds that Womack has failed to carry his burden to demonstrate that the prior criminal prosecution was pursued to a favorable termination.   Specifically, Womack failed to proffer evidence demonstrating that the criminal prosecution was terminated in such a manner to reflect that the action lacked merit or would result in a decision favorable to Womack.   Rather, Womack has baldly asserted, without citation to controlling authority, that a termination "in the interests of justice" is sufficient to satisfy the favorable termination element of his malicious prosecution claim at the summary judgment stage.[17]   The court disagrees.[18]   As the party bearing the burden of proof on this issue at trial, Womack was required, after the County pointed to

---

[17] In this regard, Womack relies on <u>Awabdy</u>.   Such reliance, however, is misplaced because <u>Awabdy</u> merely sets forth the standard for avoiding dismissal of a malicious prosecution claim at the pleading stage, not the production of evidence necessary to avoid summary judgment.

[18] A dismissal of criminal proceedings "in the interests of justice," is generally not deemed a favorable termination because such a dismissal reflects ambiguously on the merits of the action, thus leaving open the question of defendant's guilt or innocence. <u>Minasian v. Sapse</u>, 80 Cal.App.3d 823, 827 n.4 (1978); <u>see</u> <u>People v. Matthews</u>, 7 Cal.App.4th 1052, 1056 (1992) ("[D]ismissal [of a criminal indictment] in the interests of justice does not necessarily imply factual innocence, but rather may reflect the result of a negotiated or pragmatic disposition of the case.").

the absence of evidence on this issue, to produce evidence indicating that the criminal prosecution terminated in such a manner to reflect the action lacked merit or would result in a decision favorable to Womack.   Womack failed to do so. Accordingly, because the termination of the underlying prosecution leaves some doubt concerning Womack's innocence or liability, and because Womack failed to establish a genuine issue of material fact as to whether the underlying dismissal constitutes a favorable termination, the County is entitled to summary adjudication on Womack's malicious prosecution claim. See Pattiz, 61 Cal.App.4th at 826-27 (summary adjudication is appropriate if a plaintiff cannot establish an element of his or her malicious prosecution claim).[19]

For these reasons, summary adjudication of Womack's malicious prosecution claim is appropriate.

///

///

///

///

///

_____

[19] Indeed, the fact that the Attorney General's Office instituted a civil enforcement action against Womack shortly after dismissing the criminal charges, predicated upon the same facts, suggests that the charges against Womack were not dismissed based on his innocence or lack of responsibility.

### III. CONCLUSION

For the reasons stated above, the motion is **GRANTED.**
Plaintiff's claims against the County of Amador are hereby
**DISMISSED** with prejudice.


**IT IS SO ORDERED.**

ENTERED this 6th day of March, 20008.

s/RALPH R. BEISTLINE
United States District Judge
